DOMINGO VELASCO & Co., Plaintiff and Appellee-Appellant, v. RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant-Appellee.

No. 7007. Argued April 17, 1936.—Decided February 26, 1937.

B. *Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellant-appellee. *J. J. Ortiz Alibrán* for appellee-appellant.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The partnership Domingo Velasco & Co., plaintiff herein, rendered an income tax return for the taxable period comprised between October 30, 1926, and January 13, 1928, on a net income amounting to $4,118.81. As the law allows a deduction of $5,000, said partnership did not have to pay any tax whatsoever according to this return. However, on August 2, 1928, the Treasurer of Puerto Rico assessed to it a deficiency tax amounting to $980.21, taking into account its net income during the period comprised between October 30, 1926 and October 31, 1927. The Treasurer considered that the plaintiff had sustained a net loss for the remaining period, namely, up to January 13, 1928.

This action of the Treasurer was affirmed by the Board of Review and Equalization, to which the above-mentioned partnership had appealed. The said tax, amounting to $1,284.64 including surcharges for delay in the payment thereof, was paid under protest.

The present action was brought to recover said sum. It was alleged that the Treasurer did not deduct from the plaintiff's income por the period comprised between October 30, 1926, and October 31, 1927, the salaries paid to its employees,

and that on the contrary, he deducted the whole amount of those salaries from the income for the remaining period of two months and several days.

The same allegation is made with respect to a debt which appears to have been entered in the books as uncollectable, on January 15, 1928.

The district court sustained the complaint as regards the salaries, and dismissed the same as regards the uncollectible account, amounting to $6,345.56. It allowed interest at the legal rate from the date on which the payment under protest was made. Feeling aggrieved by the judgment of the court *a quo*, both parties appealed to this court: the plaintiff because of the pronouncement of the lower court as to the sum returned as uncollectible, and the defendant because of the pronouncements relating to the salaries of the employees and the interest allowed.

■■ It is true that the salaries which were paid to the employees during the year in which the tax was assessed appear to have been entered in the books of the plaintiff in January 1928; but this court has already decided that bookkeeping entries are not conclusive, and that the determination of the net taxable income rests on actual facts and not on theories, technicalities, or bookkeeping entries. *Loíza Sugar Co.* v. *Domenech,* 44 P.R.R. 536.

In the instant case it was shown that the services were rendered, and that the salaries were earned and paid throughout the taxable year. It does not matter that such salaries were entered in the books in the year 1928. The truth is that services were rendered during the period comprised between October 30, 1926, and October 31, 1927, and that the deduction of the salaries of the employees should have been made in the period in which those services were rendered.

■ As regards the interest, the Treasurer maintains that the same should not have been allowed from the date of

payment under protest of the tax illegally collected, but from the moment the complaint was filed. This contention is based on Act No. 8 of April 19, 1927 (Session Laws, p. 122), which deals in general terms with payments under protest. Said act provides that interest must be computed from the date of the filing of the complaint. The plaintiff, on the contrary, cites section 79 of Act No. 74 of 1925 (Session Laws, p. 400), which deals specifically with income taxes and provides that interest shall be paid from the date of payment of the tax illegally collected. The obligation of paying interest is a provision of a substantive character. In our opinion, application should be made herein of the special Act of 1925, which provides that interest shall be allowed and paid from the date on which the tax was paid. See *P. R. Fertilizer Co. v. Domenech*, 50 P.R.R. 389.

We have disposed of the two errors attributed to the lower court by the defendant. We now pass to determine the appeal taken by the plaintiff.

▮▮▮▮ It is urged that the lower court erred in not making any pronouncement as to the account of Miguel Ocejos with respect to whether the same should be deducted in the period of twelve months or in the period of two months and a half, and in not deducting the said account of Miguel Ocejos from the gross income for the period of twelve months comprised between November 1, 1926 and October 31, 1927.

The evidence for the plaintiff clearly shows that the said account was regarded as a loss during the year 1926, and that not withstanding such fact, an entry was made in the books reducing the said account in 25 per cent.

The witness Luis Menoyo. accountant of the plaintiff firm, testified "that in the year 1926, at the beginning of the year, upon the closing of the books, the account of Miguel Ocejos, which amounted to $8,460.75 in that year, was totally lost, as the business concern of Miguel Ocejos no longer existed, and he decided to transfer 25 per cent thereof to the profit

and loss account and that is why it shows thereafter a balance of $6,300.''

The testimony of this witness, which was produced by the plaintiff itself, shows that about the year 1926, upon the closing of the books of the partnership, this account was regarded as a total loss. The only explanation offered by the plaintiff's accountant for not having transferred the said account to profit and loss upon closing the books at the beginning of 1926, is that ''there was no desire to show such a meagre inventory in that year.'' Immediately upon offering this explanation, the witness said that when the inventory of that year was made, Miguel Ocejos was already an insolvent debtor, and that by that time the firm considered his account as worthless.

In our opinion, if this was so, the said account should have been charged off in the books then. The plaintiff contends that the Treasurer is precluded from objecting to the inclusion of 75 per cent of the account in the next taxable year since he had accepted the said deduction. In our opinion, the Treasurer is not bound to investigate whether an account is worth more or less than what is claimed by the taxpayer, inasmuch as he must assume that the taxpayer himself would be interested in excluding the whole account, unless he had a special purpose in carrying it over on his books for several years, when in fact it was a complete loss. The explanation offered by the plaintiff to justify its action is not satisfactory. It cannot be admitted that a taxpayer is at liberty to carry over an account which is totally lost, without including the same in the return for a given year, so that the balance of the business may not seem ''meagre.'' A taxpayer cannot arbitrarily determine the year in which he is to deduct the debts which are absolutely worthless. It is his duty to do so at the time such an account is ascertained to be uncollectable. In accepting the deduction, the Treasurer proceeded on the assumption that the plaintiff was telling the

truth, that is to say, that the amount of the account had been reduced in 25 per cent on the date the return was made. If it were subsequently shown that such was not the case, that is, that said account was completely worthless at the time the partial deduction was made, the circumstance that the Treasurer should have trusted the good faith of the taxpayer and the veracity of the information, can not be regarded as conclusive on the said public officer. Conceding, without holding, that the Treasurer could give his consent, he does not consent when by virtue of an erroneous information he accepts a partial deduction of an account which, according to the evidence for the taxpayer itself, introduced two years later, was ascertained to be totally lost at the time such partial deduction was made.

In *Avery* v. *Commissioner of Internal Revenue*, 22 F. (2d) 6, the United States Circuit Court of Appeals for the Fifth Circuit said:

"The Revenue Act of 1918 (40 Stat. 1057), which applies to this case, permits a taxpayer, in computing net income, to deduct debts ascertained to be worthless and charged off within the taxable year. The reasonable interpretation of the law is that, in order to secure a deduction of worthless debts, they must be charged off in the year they are ascertained to be worthless. A man is presumed to know what a reasonable person ought to know from facts brought to his attention. A taxpayer should not be permitted to close his eyes to the obvious, and to carry accounts on his books as good when in fact they are worthless, and then deduct them in a year subsequent to the one in which he must be presumed to have ascertained their worthlessness. To do so would enable him to withhold deductions in his less prosperous years, when they would have little effect in reducing his taxes, and then to apply the accumulation at another time to the detriment of the fisc. This would defeat the intent and purpose of the law."

The judgment appealed from must be affirmed.